**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**AMERICAN ENERGY CORPORATION, et al.,**

    **Plaintiffs,**

    **v.**                                       **Case No. 2:09-cv-284**
                                                **JUDGE GREGORY L. FROST**
**ROCKIES EXPRESS PIPELINE LLC,**    **Magistrate Judge Mark R. Abel**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of a motion to dismiss (Doc. # 7) filed by Defendant, Rockies Express Pipeline, a memorandum in opposition (Doc. # 10) filed by Plaintiffs American Energy Corporation and Consolidated Land Company, and a reply memorandum (Doc. # 12) filed by Defendant. For the reasons that follow, this Court finds the motion well taken.

### I. Background

This Court takes judicial notice that the instant case parallels Case No. 2:08-CV-554 presently pending on the docket. In both cases, American Energy Corporation is the operator of an underground longwall coal mining complex in Belmont and Monroe Counties named "Century Mine," and Plaintiff Consolidated Land Company is American Energy Corporation's coal lessor. Together, Plaintiffs filed the instant action to stop Defendant from interfering with Plaintiffs' exercise of their alleged superior, first-in-time property rights to plan and conduct longwall mining operations. (Doc. # 3.) Defendant is a natural gas pipeline company that is in the business of constructing and using pipelines to transport natural gas in interstate commerce for public consumption and holds a Certificate of Public Convenience and Necessity issued by

the Federal Energy Regulatory Commission ("FERC") to construct an underground natural gas pipeline. (*Id*.) The pipeline is approximately 1,679 miles long, originating out of state and running across Southern Ohio. The first two portions of this pipeline project are already in service, with the properties involved in this action falling within the third portion of the project, the Rockies Express East Pipeline Project.

The issues surrounding Plaintiffs' complaint have been briefed and considered in proceedings before the FERC since April 30, 2007, when Defendant filed its Application for the Rockies Express East Pipeline Project. *See Rockies Express Pipeline LLC,* 123 FERC ¶ 61,234, at 1 (May 30, 2008), (hereinafter referred to as the "*FERC Certificate*"). On April 4, 2008, Plaintiffs filed an untimely motion to intervene with the FERC, arguing that the FERC must consider an alternative route. (*FERC Certificate*, at 8, ¶ 21 & at. 28, ¶ 94). The area of concern is an 8-mile segment of the Rockies Express East Pipeline, between mile posts 621 and 629. (*Id*. at 25, ¶ 86). On May 8, 2008, Defendant filed further pleadings with FERC regarding the proposed route of the pipeline, and its distance from active longwall mining panels. (*Id*. at 26, ¶ 87). On May 14, 2008, Plaintiffs responded to Defendant's filing regarding the route of the pipeline and its proximity to active mining operations. (*Id*. at 26, ¶ 88).

In its FERC filings, Plaintiffs asserted the alleged dangers to the pipeline's integrity and the construction of the pipeline would interfere with the ongoing and future extraction of millions of tons of coal. (*Id*. at 26, ¶ 91). In their filings to FERC, Plaintiffs argued that Defendant's mitigation measures are not sufficient to protect the pipeline from severe ground stresses that are involved with coal mining by subsidence. (*Id*.) The FERC rendered its decision

on March 19, 2009, after evaluating fully the issues pending before this Court.[1]

On April 14, 2009, Plaintiffs filed a complaint in the Belmont County Common Pleas Court for injunctive relief, declaratory judgment, and damages against Defendant. (Doc. # 3.) The case was subsequently removed to this Court. (Doc. # 2.) In their complaint, Plaintiffs allege that Defendant is presently impeding Plaintiffs' coal and mining rights by its failure to commit to any post-construction mitigation measures. (*Id*. at ¶ 3.) Plaintiffs further aver that Defendant intends to wait until after the pipeline is constructed and operational before assessing and committing to effective definitive post-construction protective measures, thus allowing the risk of imminent danger to fall on Plaintiffs. Plaintiffs allege that the Ohio Department of Natural Resources ("ODNR") is poised to issue an Imminent Danger Cessation Order shutting down the mine if ODNR is not satisfied with the protective measures. (*Id*. at ¶ 4.) Plaintiffs further allege that they are now faced with planning and investment decisions necessary to mine and recover the coal under a major segment of the pipeline route without any assurance that ODNR will ultimately allow mining.

For that reason, Plaintiffs contend that Defendant should not be permitted to install its pipeline over Plaintiffs' operations before it commits to a detailed and definitive plan that eliminates the potential for disruptions to mining operations. (*Id*.) Plaintiffs request that they be entitled to mine all of the coal under Defendant's pipeline using the longwall mining process without interference from Defendant and that Defendant must determine which measures will eliminate the risk of imminent danger and disruptions to Plaintiffs' mining operations and

---

[1] Although it does not appear that any party has filed a copy of the March 19, 2009 letter in this case, Plaintiffs' complaint references the letter. (Doc. # 3 ¶ 17.) The Court takes judicial notice of the letter, which is included within the record of Case No. 2:08-CV-554.

commit to implement and pay for them. Plaintiffs further request that Defendant be enjoined from placing its pipeline over active mining areas until Defendant comes forward with a definitive mitigation plan certified by an Ohio registered engineer, and also request a mandatory injunction requiring Defendant to develop such a plan. Plaintiffs also seek compensatory damages and legal and/or equitable relief. (*Id.* ¶¶ A-E.)

On April 24, 2009, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] Defendant argues that Plaintiffs' lawsuit is nothing but a legally impermissible attempt to relitigate issues that have already been ruled upon and that are within the exclusive jurisdiction of the FERC and the United States Court of Appeals. For the following reasons, this Court finds Defendant's motion well taken.

## II. Discussion

Federal Rule of Civil Procedure 12(b)(6) requires an assessment of whether Plaintiffs have set forth a claim upon which this Court can grant relief. Under the United States Supreme Court's most recent articulation of the analytic standard involved in applying this rule, this Court must construe the complaint in favor of Plaintiffs, accept the factual allegations contained in the complaint as true, and determine whether Plaintiffs' factual allegations present plausible claims. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007); *Luckey v. Butler County*, No. 1:06cv123, 2007 WL 4561782, at *1 (S.D. Ohio Dec. 21, 2007) (characterizing *Bell Atlantic* as requiring that a complaint " 'state a claim to relief that is plausible on its face' " (quoting *In re OSB Antitrust Litigation*, No. 06-826, 2007 WL 2253419, at *2 (E.D. Pa. Aug. 3, 2007))). To be

---

[2] In addressing this motion, this Court can examine material referenced in and incorporated into the complaint without converting the motion to one for summary judgment. *See Smith v. Potter*, No. 1:08-CV-390, 2009 WL 1851376, at *5 (S.D. Ohio June 29, 2009).

considered plausible, a claim must be more than merely conceivable. *Bell Atlantic Corp.*, 127 S. Ct. at 1974; *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). Thus, the factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp.*, 127 S. Ct. at 1964-65. *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

Relying on the foregoing standard, Defendant posits that Plaintiffs have failed to present claims upon which this Court can grant relief based on the fact that the issues in this action are within the exclusive jurisdiction of FERC and the United States Court of Appeals. It is beyond dispute that the FERC has exclusive jurisdiction over the conditions of a FERC certificate, including the route of the pipeline over Plaintiffs' properties and the construction conditions of Defendant's pipeline over Plaintiffs' properties. *See Portland Natural Gas Transmission Sys. v. 4.83 Acres More or Less*, 230 F.3d 1347, 2000 WL 1425761, at *1 (1st Cir. 2000) (unpublished table decision); *Williams Natural Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 264 (10th Cir. 1989) *cert. denied*, 497 U.S. 1003 (1990); *Northwest Pipeline G.P. v. Francisco*, No. C08-0601MJP, 2008 WL 4547216, at *5 (W.D. Wash. Oct. 3, 2008); *Rockies Express Pipeline, LLC v. 123.62 Acres*, No. 1:08-CV-0751-RLY-TAB, 2008 WL 4493310, at *1 (S.D. Ind. Oct. 1, 2008); *Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement*, Nos. 08-168, 08-169, 08-177, 08-179, & 08-180, 2008 WL 4346405, at *5 (W.D. Pa. Sept. 19, 2008); *Rockies Express Pipeline LLC v. 77.620 Acres More or Less*, No. 08-3127, 2008 WL 3849911, at *2 (C.D. Ill. Aug. 15, 2008); *Columbia Gas Transmission Corp. v. An Easement to Construct, Operate and Maintain a 24-Inch Pipeline Across Properties in Shenandoah County, Virginia*, No. 5:07cv04009, 2008 WL 2439889, at *2 n.4 (W.D. Va. June 9, 2008); *Islander East Pipeline*

*Co., L.L.C. v. Blumenthal*, 478 F. Supp. 2d 289, 295 (D. Conn. 2007); *Williston Basin Interstate Pipeline Co. v. Dolyniuk Family Trust*, No. A-1-03-66, 2005 WL 1398692, at *2 (D.N.D. June 7, 2005); *Kansas Pipeline Co. v. 200 Foot by 250 Foot Piece of Land*, 210 F. Supp. 2d 1253, 1256 (D. Kan. 2002).

Similarly, a district court lacks jurisdiction to review the validity and/or conditions of a FERC certificate. *See Williams*, 890 F.2d at 264 (holding that "the eminent domain authority granted the district courts under § 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h), does not provide challengers with an additional forum to attack the substance and validity of a FERC order"). Furthermore, the function of the district court is not to provide appellate review, but rather to provide for enforcement. *Id*.

In light of the foregoing authority and the statutes construed therein, this Court cannot consider an attack on "the propriety of FERC's proceedings, findings, orders, or reasoning." *Steckman Ridge GP, LLC,* 2008 WL 4346405, at *4. Accordingly, Plaintiffs' arguments constituting such an attack that are offered in support of this Court entertaining the revisiting of FERC's proceedings, findings, orders, or reasoning fail to persuade. To reach a contrary conclusion would ignore the March 19, 2009 findings and orders of FERC permitting construction; in effect, Plaintiffs ask this Court to deem FERC's action pointless. The law does not permit this Court to act as a reviewing entity second-guessing FERC's actions or reasoning here, regardless of the possible implications of FERC's decisions. The FERC letters permit construction, even if violative of FERC's own rules, and this Court is not empowered to interfere with that decision.

Plaintiffs' complaint raises issues regarding safety precautions and the effect of

Defendant's pipeline on Plaintiffs' mining operations resulting from Defendant's pipeline, which have been exhaustively considered by the FERC. (Doc. # 3, ¶ 4.) Plaintiffs' claims further go directly to the Mitigation Plan extensively argued before the FERC. Such arguments constitute collateral attacks on the FERC Certificate and the FERC's decision to release Defendant to construct the pipeline across Plaintiffs' operations. As set forth above, this Court has no jurisdiction to take up review of the FERC's finding as to safety and Defendant's mitigation plan.

Plaintiffs argue in their memorandum opposing Defendant's motion to dismiss that their newly filed litigation does not challenge any aspect of the FERC decision, but instead seeks to address matters that the FERC has neither decided nor will even consider. Plaintiffs assert that they have brought this action principally for declaratory and injunctive relief to stop Defendant from interfering with Plaintiffs' exercise of their superior, first-in-time property rights. Plaintiffs contend that the lack of certainty inherent in Defendant's plan interferes with Plaintiffs' property rights. Plaintiffs further contend that the issue presented concerns property rights under state law and whether Defendant's use of the easement it is acquiring interferes with Plaintiffs' right to mine all of the coal and remove subjacent and lateral support in the process.

Plaintiffs' argument is factually disingenuous, however, because Plaintiffs seek to obtain in the present litigation what they were unsuccessful in obtaining in the proceeding before the FERC. In *Steckman*, the court was similarly confronted with a landowner's attempt to collaterally attack the FERC decision on the basis of alleged safety issues and on the allegation that the FERC decision impaired other's property rights. Similarly here, Plaintiffs carefully characterized their complaint to address the alleged superior property rights.

But the FERC decision recognizes that construction of Defendant's pipeline will not interfere with Plaintiffs' property rights to mine the coal underneath Defendant's pipeline.[3] As in *Steckman*, where the court found that it was without jurisdiction to address such arguments, similarly this Court has "no power to impose conditions concerning safety or the potential for interfering with other's property rights on a pipeline company's exercise of authority granted to it by FERC." *Steckman*, 2008 WL 4346405, at *5. Plaintiffs' carefully characterized complaint targets the same core issues that were either explicitly or implicitly involved in the FERC proceedings. The FERC decision related to these issues preclude the Court form entertaining Plaintiffs' arguments, which however artfully presented nonetheless constitute an impermissible collateral attack on the FERC decisions. Further, any attempt to challenge a FERC-issued license, no matter how well pled, falls under the federal court of appeals' jurisdiction. *See Williams*, 890 F.2d at 264.

Implicit in the FERC conclusion is the fact that there is no conflict in the use of the land between Plaintiffs and Defendant. Plaintiffs have and continue to have the coal and mineral rights to operate the Century Mine in Belmont and Monroe Counties, Ohio. Defendant in turn was granted as of the March 19, 2009 Letter Order by Ms. Alisa M. Lykens, Chief, Gas Branch 2 of FERC the right to start construction of Spread K (mileposts 608.9 through 639.1) of the Rockies Express Pipeline.

In asserting that these rights conflict, Plaintiffs rely heavily on *Ohio Valley Coal Company v. East Ohio Company*, No. 91-CV-210 (Ohio Ct. Com. Pl. Jan. 28, 1992). However,

---

[3] The FERC's conclusions are predicated on its recognition that there is no conflict in usage rights or priority of use here; the FERC found that mining could continue. Any effect on Plaintiffs' mining is ultimately a damages issue to be resolved in Case No. 2:08-CV-554.

such reliance is misplaced. First, the *Ohio Valley* case did not involve a dispute where, as here, a FERC-certified pipeline company has been released to commence construction of a natural gas pipeline. In contrast, the *Ohio Valley* case involved litigation instigated by a coal mining company that held mining rights under an existing pipeline and sought to compel the pipeline owner, East Ohio, to implement measures to protect the existing pipeline from any subsidence potentially caused by the planned mining operations. The *Ohio Valley* court specifically noted that East Ohio had avoided plans to protect its pipeline property during mining operations "as part of its litigation strategy." *Ohio Valley* No. 91-CV-210 slip op. at 6. The court ultimately (1) directed the pipeline company to take all appropriate steps to ensure that its pipelines did not endanger the public during mining operations, and (2) prohibited the pipeline company from interfering with Ohio Valley Coal's rights to safely mine without interruption. *Id*. at 8. In contrast, the instant case presents a situation in which the FERC conclusions have approved the type of safety conditions sought in *Ohio Valley*. Plaintiffs may disagree with the FERC-approved plan, but this Court does not have jurisdiction to revisit the FERC conclusions.

Plaintiffs also make the conclusory allegation within their complaint that the ODNR "is poised to issue an Imminent Danger Cessation Order shutting down the mining if not satisfied with protective measures." (Doc. # 3, ¶ 4.) But Plaintiffs provide no facts to support this speculation. Assuming *arguendo* that Plaintiffs' allegations are true, this does not change the fact that the FERC has authorized Defendant to construct the pipeline and Defendant has eminent domain authority under the Natural Gas Act, 15 U.S.C. § 717f(h). Should the ODNR issue a cessation order contrary to FERC's finding that Plaintiffs' can safely mine the coal underneath the pipeline, this would only be relevant to a damages claim. Plaintiffs' ability, or

9

alleged inability, to extract its coal underneath the FERC-approved pipeline project is only relevant to alleged damages, which are already before this Court in Defendant's condemnation action constituting Case No. 2:08-CV-554.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss. (Doc. # 7.) The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division, at Columbus.

**IT IS SO ORDERED**.

                                                                /s/ Gregory L. Frost
                                                            GREGORY L. FROST
                                                            UNITED STATES DISTRICT JUDGE